## TOM ROBINSON V. THE STATE.

*No. 1280. Decided February 17th, 1897.*

**1. Continuance.**

An application for continuance must make manifest the materiality of the proposed absent testimony.

**2. Theft From the Person—Charge of the Court—Harmless Error.**

On a trial for theft from the person, where the indictment charged, that the offense was committed by taking the property so suddenly as not to allow time to make resistance before it was carried away; and the court charged the jury both as to the offense as alleged in the indictment, and also as to the offense when committed without the knowledge of the prosecutor; but, said last portion of the charge was not excepted to. Held: The evidence being amply sufficient to support the allegation in the indictment, the error in the charge was not of a character calculated to prejudice the rights of defendant, and would not constitute ground for reversal—the charge not having been excepted to.

**3. Same—"Principals"—Charge.**

On a trial for theft from the person, the definition of "Principals," in the charge, if incorrect, could not have injured the defendant where there was no question that defendant was present and aided and abetted in the theft with guilty knowledge thereof; and where the court, in applying the law to the facts, instructed the jury, that, if they "found the offense was committed by one B., but, that defendant was present, and knowing the unlawful intent of the said B., aided him by acts or encouraged him by words, in the commission of said offense, if any, to find defendant guilty," etc.

APPEAL from the District Court of McLennan. Tried below before Hon. SAM R. SCOTT.

Appeal from a conviction for theft from the person; penalty, five years in the penitentiary.

The indictment charged appellant with the theft of $9$\frac{30}{100}$, from the person of Ransom Leonard, "and so suddenly as not to allow and admit time to make resistance before the property was carried away."

Ransom Leonard testified: "He met defendant and Bully on Elm street, about 11 o'clock, on November 23d, 1896; witness was then going to his wagon that was on River street; he had his money in his hand; had just got a ten-dollar bill changed at a saloon on Elm street; had paid a man seventy-five cents he owed him, and had nine dollars and thirty cents left. Had it in his hand because he had overalls on over his pants, and the pockets of the overalls were not good; and he was going to pay the woman he owed for the brick he had bought from her; fifty cents. Witness was coming down Elm street, when he saw defendant and Bully coming up Elm street; witness was about 60 or 70 yards from the saloon; Bully spoke to witness and stopped him; said he was distributing lottery tickets, and wanted witness to take some of them and give them out for him; that he was getting one dollar a hundred for doing the work; defendant passed on and made as if he was going on up the street, but presently stopped and came back to where witness and Bully were standing and asked witness if there was a wagon yard on the other side of the street? Witness told him yes. Defendant started

off and, as he did so, pulled his hands out of his overcoat pockets and dropped a little cigarette box with a rubber around it on the ground in front of witness. Bully picked it up and said, let's see what is in this thing; witness said there was nothing in it. Bully said there might be $5 or $10 it. Bully opened it and got a copper cent out of it. This will get me a stamp, said Bully. Witness said, it would get him a postal card. Bully put the copper cent in his vest pocket. He then fixed the box up like it was at first and dropped it on the ground; defendant came back about that time and picked it up, saying, "this is mine, I have been carrying this box five years—would not take anything for it." Witness said, he knew that was not so from the looks of the box. Bully said, there was nothing in it, witness said there was and offered to bet Bully a dollar. Bully said, why not bet $5 or $10 dollars? Defendant said, he did not have the money. Bully said to witness, you bet. Witness said no, I will not, it is your affair. While witness was standing there looking at defendant Bully slapped or snatched witness money from his hand—he did not know which—and turned it over to defendant. Bully and defendant got all of witness money; witness then asked defendant for the money; thought they were playing with him; witness started towards defendant and defendant put his hands in his pocket and said no, I will not down you. Bully had gone then, and defendant and witness walked to River street, witness still asking defendant for his money. Defendant gave witness fifty cents. Witness told defendant if he did not give him his money he would have him arrested. Witness went over to his wagon and paid for brick and drove up Elm street. Witness met Policeman Moore and told him of his trouble. Moore told witness to go on up the street and he would find Policeman Wilson, as he was off duty. Witness found Wilson, and he and witness started together to look for defendant, and soon found him. Wilson arrested defendant and asked him what he had on him? Defendant said money—that he had won it fairly. This all occurred in McLennan County, Texas, on Monday, the 23d of November, 1893. Witness did not consent to taking of his money by defendant and Bully. They got $9.$\frac{30}{100}$. Defendant gave me back fifty cents. It was silver money of the value of $9.$\frac{30}{100}$, and was the property of witness, whose name was Ransom Leonard."

*Samuel H. Clayton*, for appellant, filed a motion and brief, and argument on the motion for rehearing.

*Mann Trice*, Assistant Attorney-General, for the State.

[No brief found with the record.—Reporter.]

DAVIDSON, JUDGE.—Appellant was convicted of theft from the person, and given five years in the penitentiary, and prosecutes this appeal. Appellant made a motion for a continuance, which was overruled

by the court, and he excepted.   Appellant sued out a subpœna for one Jones Ross on November 28, 1896, which was returned by the sheriff of McLennan County, not executed; said witness not being found in the county.   Appellant states that he would be able to prove by said absent witness that he saw Ransom Leonard, the prosecutor, and another man, standing together on Elm street, talking, and, as defendant and witness approached, the other man, talking to Leonard, called to the defendant and made a proposition to bet with him.   The materiality of this testimony is not made to appear by this application, and, when we look to the statement of facts, it is absolutely immaterial whether a transaction of the character as detailed in the application occurred or not.   It might have been another transaction, or, if it was a part of the same transaction, it does not militate with the facts constituting the alleged theft in this case.   Appellant, in his motion for a new trial, objects to the charge of the court, in stating, in the definition of the offense, that the theft must be committed without the knowledge of the prosecutor, from whom the property is taken, or so suddenly as not to allow time to make resistance before the property is carried away.   Appellant insists that the first part of said subdivision does not conform to the charge in the indictment, and states a ground not alleged in the indictment, upon which defendant could be convicted, which instruction was material error, and calculated to injure the rights of the appellant.   Subsequently the court, in instructing the jury as to the law applicable to the case, tells the jury, "if they find from the evidence that the defendant committed the offense of theft from the person of Ransom Leonard, as that offense has been defined herein, then find defendant guilty," etc.   It is true, the indictment only charges theft from the person by a taking so suddenly as not to allow time to make resistance before the property was carried away, and the court should not have embodied the first part of the definition of "theft from the person" in his charge.   However, no exception was taken to the charge in this respect, and the question now is, did the fact that the court embodied this part of the definition of "theft from the person" in his charge prejudice the appellant?   In other words, was the jury confused or misled thereby? If there was evidence in the case that the theft had occurred by defendant privately stealing from the person of Leonard the property in question, without his knowledge, and there was also proof that the theft was committed in the other manner—that is, by so suddenly taking it as not to allow time for resistance—then there might be danger that appellant had been convicted under the first portion of the charge, and not under the last.   But the evidence here does not present such a case.   In this case there is no evidence in the record tending to show that the property was privately taken from the person of Leonard without his knowledge.   On the other hand, the proof is absolute that the property was taken with Leonard's knowledge, but so suddenly as not to allow time or opportunity for resistance.   So we take it that the bare fact that a character of theft from the person not set out in the indictment was

contained in the charge of the court defining the offense, in the absence of any testimony indicating or tending to show that character of theft, could not have operated to the prejudice of the appellant. If a timely exception had been made to the charge of the court, and the court had refused to correct the charge in this respect, under the decisions it might have been regarded as error. But that is not the case here, and, in the absence of some showing that said charge was of a character calculated to work prejudice to the rights of the defendant, it will not be considered a ground for reversal. Appellant also complains of the charge of the court in its definition of "principals." If it be conceded that said charge is incorrect as to who are principals, this could not have possibly misled the jury. There was no question that the defendant was present, and aided and abetted in the theft, with guilty knowledge thereof; and the charge, when it comes to apply the law to the facts of the case, directly instructed the jury that if they "found the offense was committed by one Bully, but that the defendant, Tom Robinson, was then and there present, knowing the unlawful intent of the said Bully, aided him by acts or encouraged him by words in the commission of said offense, if any, to find defendant guilty," etc. No reversible errors appearing in the record, the judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter].